<u>NOT FOR PUBLICATION</u>

**UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF NEW JERSEY**

| | |
|---|---|
| **RUZA VAJENTIC,**<br><br>    **Plaintiff,**<br><br>v.<br><br>**COMMISSIONER OF SOCIAL SECURITY,**<br><br>    **Defendant.** | 05-3147 (WJM)<br><br><br><br>**OPINION** |

Lawrence E. Kazmierczak
593 Ramapo Valley Road
P.O. Box 185
Oakland, NJ 07436
*Attorney for Plaintiff*

Dennis J. Canning
Special Assistant U.S. Attorney
c/o Social Security Administration
Office of the General Counsel
26 Federal Plaza, Room 3904
New York, NY 10278
*Attorney for Defendant*

**MARTINI, U.S.D.J.:**

**I.    INTRODUCTION**

Plaintiff Ruza Vajentic brings this appeal pursuant to 42 U.S.C. § 405(g) and 1383(c)(3), seeking review of the denial of her application for Disability Insurance Benefits ("DIB") by the Commissioner of Social Security ("Commissioner"). After hearing Plaintiff's case, Administrative Law Judge Edgell ("ALJ") issued a written opinion holding that Plaintiff retained

the residual functional capacity to do seamstress work and therefore was not entitled to benefits. The Appeals Council denied Plaintiff's request for review on April 15, 2005.

Plaintiff claims that the ALJ's decision was not supported by substantial evidence, specifically that the ALJ erred in determining that her depression and carpal tunnel syndrome were not severe, in weighing the testimony of her doctor in determining Plaintiff's residual functional capacity, and in finding that she could return to her former type of employment. For the reasons below, the decision of the Commissioner is **AFFIRMED.**

## II.     CASE HISTORY

### A.     Factual Background

Plaintiff Ruza Vajentic was born in Croatia in 1952, and came to the United States in 1971 after completing school up to the eighth grade. She speaks and understands basic English, but is able to read only short, basic words such as the words on street signs and in some newspaper headlines. Her relevant employment history included working as a seamstress and working as a counter clerk at a deli. (Tr. at 264-65.)[1] Plaintiff injured her back in an automobile accident in 1998 and later suffered from severe back pain radiating in both legs. (Tr. at 144.) In May 2000 she underwent back surgery in order to remove a herniated disk. Plaintiff stated she felt better after the surgery and was able to return to work a few months later. (Tr. at 275.) She began having problems again with back pain, forcing her to take time off from work. Plaintiff also sought treatment for other ailments including carpal tunnel syndrome, insomnia, hypertension, phlebitis, depression and a thyroid disorder from her general practitioner, Dr.

---

[1] The designation "Tr." refers to the administrative record.

Strika. After missing work repeated times because of back pain, Plaintiff was fired from her job in September 2002. (Df. Br. at 2); (Tr. at 271.)

### B. Procedural Background

Plaintiff applied for DIB in March 2003, claiming that she was disabled and entitled to benefits from September 22, 2002 onward. (Df. Br. at 2.) The application was denied by the initial examiner, and again on reconsideration. (*Id.*) Plaintiff appeared at a hearing before an ALJ to present her claim. (*Id.*) The ALJ issued an opinion denying her request for disability benefits and the Appeals Council subsequently denied Plaintiff's request for review. (*Id.*) Plaintiff now requests that this Court review the decision of the ALJ.

## III. STANDARD OF REVIEW

The district court exercises plenary review over the ALJ's legal conclusions and is bound by the ALJ's factual findings if they are supported by substantial evidence. *Sykes v. Apfel*, 228 F.3d 259, 262 (3d Cir. 2000). Substantial evidence "does not mean a large or considerable amount of evidence, but rather such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Pierce v. Underwood*, 487 U.S. 552, 565 (1988) (citation omitted); *see also Woody v. Sec'y of Health & Human Servs.*, 859 F.2d 1156, 1159 (3d Cir. 1988) (stating that substantial evidence is "more than a mere scintilla but may be less than a preponderance.") Thus, the Court's inquiry is limited to whether the record, read in its entirety, yields such evidence as would allow a reasonable mind to accept the conclusions reached by the ALJ. *See Jones v. Barnhart*, 364 F.3d 501, 503 (3d Cir. 2004) ("Overall, the substantial evidence standard is a deferential standard of review.")

## IV.     FIVE-STEP DISABILITY DETERMINATION

An ALJ considering a claim for disability benefits must apply a five-step sequential evaluation process. 20 C.F.R. § 404.1520; *Burnett v. Comm'r of Soc. Sec. Admin.*, 220 F.3d 112, 118 (3d Cir. 2000). At step one, the ALJ determines whether the claimant is engaged in substantial gainful activity. 20 C.F.R. § 404.1520(a). If the claimant is found to be engaged in substantial activity, the disability claim will be denied. *Id.* In step two, the ALJ must next determine whether the claimant is suffering from an impairment or combination of impairments that is "severe." *Id.*; 20 C.F.R. § 404.1520(c). If the claimant cannot show his impairment is "severe," he is ineligible for disability benefits. 20 C.F.R. § 404.1520(a). However, if the claimant demonstrates a "severe" medical impairment, the ALJ must determine in step three whether the impairment meets or equals an impairment listed by the Commissioner as creating a presumption of disability.[2] 20 C.F.R. § 404.1520(d). If a match is found, the ALJ enters a finding of disability without considering other factors such as age, education, and work experience. *Id.* Conversely, if there is no match, the ALJ must proceed to steps four and five. *Burnett*, 220 F.3d at 118.

In step four, the ALJ must decide if the claimant retains the residual functional capacity to perform past relevant work. 20 C.F.R. § 404.1520(e)-(f). At this step, the claimant has the burden of demonstrating his or her inability to perform past work. *Burnett*, 220 F.3d at 118 (citation omitted). If the claimant does not have the capacity to resume past work, the evaluation will continue to the fifth step. *Id.*

---

[2]The Commissioner's list is located at Appendix 1 to 20 C.F.R. pt. 404, subpt. P.

At the fifth step, the burden shifts to the Commissioner to demonstrate the claimant is capable of performing some other available work in the national economy, taking into consideration the claimant's age, education, past work experience, and residual functional capacity.  20 C.F.R. § 404.1520(g); *Burnett*, 220 F.3d at 118.  If the claimant cannot perform other work in the national economy, the ALJ must grant disability benefits.  20 C.F.R. § 404.1520(g).

## V.     DISCUSSION

In reaching the decision that Plaintiff was not entitled to DIB, the ALJ performed the five-step analysis required by 20 C.F.R. § 404.1520 as outlined above.  Under step one, the ALJ found that the Plaintiff has not engaged in substantial gainful activity since the alleged onset of her disability.  (Tr. at 14.)  Under step two, the ALJ concluded that all but two of the Plaintiff's impairments were "severe" based on the requirements outlined in 20 C.F.R. § 404.1520 (b).  (*Id.*)  Under step three however, the ALJ determined that Plaintiff's "severe" impairments did not meet or equal any of the impairments in the listings, thus requiring a residual functional capacity analysis.  (*Id.*)  After determining, under step four, that Plaintiff had the residual functional capacity to do light work, the ALJ found that she was still able to perform her past relevant work as a seamstress.  (*Id.* at 17-18.)  Thus, the ALJ concluded at step four of the analysis that Plaintiff was not disabled as defined by 42 U.S.C. § 423 and 20 C.F.R. § 404.1520, and therefore was not entitled to benefits.

### A. The ALJ's Determination that Plaintiff did not Have a Listed Impairment was Based on Appropriate Factors

Plaintiff contends that the ALJ failed to evaluate whether or not Plaintiff had a "severe" impairment as listed in Appendix 1 to 20 C.F.R. Part. 404, Subpart P, Appendix 1.  This claim is incorrect.  The ALJ's opinion, in fact, specifically states that some of Plaintiff's impairments (hypothyroidism, irritable bowel syndrome, history of lumbar laminectomy and hypertension) are "'severe' within the meaning of the Regulations but not 'severe' enough to meet or medically equal, either singly or in combination to one of the impairments listed . . . ."  (Tr. at 14.)

An ALJ may not rely on a conclusory statement alone in determining that an impairment does not match the listing.  *See Burnett v. Comm'r of Soc. Sec. Admin.*, 220 F.3d 112, 119-20 (3d Cir. 2000).  However, "*Burnett* does not require the ALJ to use particular language or adhere to a particular format in conducting his analysis.  Rather, the function of *Burnett* is to ensure that there is sufficient development of the record and explanation of findings to permit meaningful review."  *Jones v. Barnhardt*, 364 F.3d at 505 (citing *Burnett*, 220 F.3d at 120).  Plaintiff does not specifically challenge the ALJ's step-three ruling as being insufficient under *Burnett*.  Nor does she provide any evidence that her condition might equal a specifically listed impairment, despite her burden of production at this stage.  Regardless, in this case, as in *Jones*, the ALJ's opinion, read as a whole, indicates that "the ALJ considered the appropriate factors in reaching the conclusion" that Vajentic did not meet the requirements for any listing.  *Jones v. Barnhardt*, 364 F.3d at 505.  Moreover, the record provides ample evidence to confirm the ALJ's conclusion.

Without restating the entirety of the ALJ's decision or all of the medical evidence in the well-documented record, it is sufficient to note that the ALJ specifically referenced reports of hypertension and blood pressure readings, lumbar disc herniation, spinal motion and strength, back pain, colonosopy and endoscopy, abdominal CT, brain MRI, hypertensive history and general observations gleaned from the sum total of reports as regards the Plaintiff's health in light of her complaints.  (Tr. at 14-17.)  These references to specific evidence used by the ALJ in evaluating Plaintiff for a listed impairment satisfies the Court that the ALJ considered the appropriate factors in his step three determination as outlined in both *Jones* and *Burnett*.  Moreover, this Court's review of the record leads it to the conclusion that there was ample medical evidence to support the ALJ's conclusion that Plaintiff had no listed impairment.

**B.     The ALJ had an Adequate Basis for Rejecting Evidence from Dr. Strika**

Plaintiff claims that the ALJ did not provide an adequate basis for rejecting testimony from Dr. Zivko Strika, and therefore the decision to deny benefits was not supported by substantial evidence.  (Pl. Br. at 7.)  Plaintiff also claims that if the ALJ believes that there was a lack of evidence to support Dr. Strika's conclusion, it is obligated to request clarification.  Although it is true that significant weight should generally be given to the opinions of treating physicians, these opinions need not be controlling if these findings are contradicted by other medical evidence in the record.  *Morales v. Apfel*, 225 F.3d 310, 317-18 (3d Cir. 2000) (citations omitted).  *See also* 20 C.F.R. § 404.1527 (d)(2).

In determining how credible an expert's opinion is, the ALJ is permitted to consider factors such as the nature and extent of the treatment relationship, the expert's area of specialization, the amount of support in the form of medical evidence and explanation the expert

provides to substantiate the opinion, and how consistent the expert's opinion is with the record as a whole.  20 C.F.R. § 404.1527 (d)(2-6).  The ALJ is also bound to consider the testimony of state agency medical and psychological consultants, applying the same rules for evaluating their credibility as is used for treating physicians.  20 C.F.R. § 404.1527 (f).  The ALJ has discretion to assign appropriate weight to medical testimony.  *Alexander v. Shalala*, 927 F.Supp. 785, 795 (D.N.J. 1995).

Dr. Strika has been Plaintiff's treating physician for approximately 18 years.  (Df. Br. at 3.)  In his letter to the Commissioner dated April 22, 2003, Dr. Strika states that Plaintiff continues to experience severe pain and is totally and permanently disabled.  He traces her pain to a herniated disk for which she had surgery in May 2000 and characterizes her pain after the procedure as excruciating (Tr. at 145.)  In December 2004, Dr. Strika filled out a form indicating that Plaintiff could stand for only two or fewer hours per day, and could sit for fewer than six hours per day.  Dr. Strika also indicated that Plaintiff was generally able to lift less than ten pounds.  (Tr. at 233-234.)

However, these opinions are contradicted by other experts' opinions and are weakened by Dr. Strika's and Plaintiff's lack of follow-up treatment.  Also, the ALJ wrote that Dr. Strika's opinion was not well supported by medically acceptable clinical and laboratory diagnostic techniques or other objective findings.  Dr. Strika notes in July 2002 that Plaintiff suffers from back pain and from pain in her hand resulting from carpal tunnel syndrome but makes no referral to a specialist or for diagnostic testing for either condition.  (Tr. at 244, 276, 286.)  Plaintiff testifies during her hearing that no appointments have been made with specialists for follow-up

treatment of these conditions.[3]  (*Id.* at 276, 278, 286.)  According to the post-surgery discharging physician, Dr. Alfred Steinberger, Plaintiff felt much better after the 2000 back operation, and in her disability report Plaintiff states that pain didn't begin to bother her until January 2002.  (Tr. at 71, 139.)  Examining physician Dr. John M. Sawicki diagnosed Plaintiff with lower back pain and decreased range of motion but wrote that she exhibited a "normal gait" during the evaluation on June 17, 2003.  (Tr. at 165.)  Another examining physician, Dr. Michael Pollack, gave the Plaintiff a fair prognosis on June 23, 2003.  (Tr. at 173.)  Moreover, a state agency doctor's report from August 2003 indicated that Plaintiff could lift 20 pounds occasionally or 10 pounds frequently, and could stand, walk, or sit for about six hours in an eight hour work day.  (Tr. at 180.)  Finally, the ALJ took into account the dearth of objective findings and medical evidence to support Dr. Strika's conclusion that Plaintiff is disabled.  *See* 20 C.F.R. § 404.1527 (d)(3).

In sum, the opinion of Dr. Strika is not well supported, even by his own notes, and is heavily contradicted by other medical evidence in the record.  The ALJ did not simply ignore evidence from Dr. Strika, but noted that she "does not find the opinion of Dr. Strika . . . to be persuasive as it is not well supported by medically acceptable clinical and laboratory techniques and it is inconsistent with other medical and non-medical evidence in the record."  (Tr. at 16.)  Furthermore, clarification from the treating physician is not required when the ALJ is able to make a determination about whether the claimant is disabled based on other evidence in the record.  20 C.F.R. § 404.1527 (c).  *Smith-Levering v. Barnhart*, not reported 2004 WL 2211963 (D.Del. 2004).  Therefore, there was substantial evidence in the record and in the ALJ's written

---

[3]  When asked at her hearing if Dr. Strika sent her to a hand specialist, Plaintiff responded "yes, I got to go."  However, Plaintiff never clarified her answer, and Dr. Strika's records and the rest of the administrative record contain no evidence of either such a referral or visit.  (Tr. at 286.)

opinion supporting his decision to place more weight on evidence from examining doctors and to reject evidence from Dr. Strika.

### C. The ALJ Properly Determined that Plaintiff's Depression and Carpal Tunnel were "Non-Severe"

Plaintiff claims that the ALJ ignored her diagnoses of depression and carpal tunnel syndrome and improperly found these health issues not severe in assessing whether she was disabled. With respect to step two of the five-step analysis described above, the Social Security Administration ("SSA") defines a "severe" impairment in the negative, stating, "an impairment or combination of impairments is not severe if it does not significantly limit your physical or mental ability to do basic work activities." 20 C.F.R. § 404.1521(a). The SSA then defines "basic work activities" as abilities and aptitudes necessary to do most jobs, including, for example, "walking, standing, sitting, lifting, pushing, reaching, carrying, or handling." 20 C.F.R. § 404.1521(b).

Despite the use of the word "severe," the Commissioner has explained that to pass step two of the five-step analysis, an applicant must merely show "something beyond a slight abnormality or a combination of slight abnormalities which would have no more than a minimal effect on an individual's ability to work." *McCrea v. Comm'r of Soc. Sec.*, 370 F.3d 357, 360 (3d Cir. 2004) (internal citations omitted). The court in *McCrea* evaluated whether the claimant's neck, back and shoulder impairments were severe by inquiring whether the claimant's subjective complaints of pain were corroborated by objective medical evidence and the claimant's treatment history for the impairment. Although doubt as to whether the plaintiff met the burden of proof for demonstrating that the impairment is severe is to be resolved in favor of

10

the plaintiff, the purpose of the inquiry at step two is to dispose of groundless claims.  *McCrea*, 370 F.3d at 360.

While the court in *McCrea* found that the ALJ improperly determined that the claimant's impairments were not severe, this Court finds there is substantial evidence on the record to support the ALJ's finding that Plaintiff's subjective complaints of pain were not corroborated by objective medical evidence and Plaintiff's treatment history.  Unlike in *McCrea*, Plaintiff here had no objective medical findings to support her general practitioner, Dr. Strika's, diagnosis of carpal tunnel syndrome.  When the ALJ asked during the hearing if there was additional medical evidence on Plaintiff's carpal tunnel syndrome, Plaintiff's attorney stated, "No.  The only thing we have is the report from Dr. Strika."  (Tr. at 289.)  Also, Plaintiff had only a scant amount of treatment to support her complaints of pain from carpal tunnel syndrome.  Her treatment for the syndrome consisted only of one medrol injection upon diagnosis of the syndrome and one injection six months later.  Moreover, Plaintiff here, in contrast to *McCrea*, had no diagnostic tests, other expert opinions, or treatment above and beyond the medrol injections to substantiate her assertion that the carpal tunnel syndrome she suffered from was severe.

As to Plaintiff's depression, the objective medical evidence does not demonstrate more than a slight abnormality or combination of abnormalities and Plaintiff's treatment history consisted only of one consultation with a social worker and the prescription of an antidepressant medication.  Plaintiff never returned for follow-up treatment.  (Tr. at 159.)  The objective medical evidence in support of Plaintiff's assertion that her depression is a severe impairment consists only of a diagnosis of "mood disorder due to chronic back pain."

11

Importantly, Plaintiff presents no medical evidence to show that her purported depression would have more than a minimal effect on her ability to work. Each of her evaluating mental health professionals noted that she exhibited a full range of affect and indicated that her mental state was "fair" or better on almost every mental health criterion. The ALJ points to the state psychiatrist, Dr. Flock's, conclusion that Plaintiff has no severe psychiatric impairment. Dr. Flock's evaluation of Plaintiff is consistent with the other professionals who evaluated Plaintiff. Dr. Hasson noted that Plaintiff "showed no signs of acute distress" and that she "was pleasant and showed no signs of depression." (Tr. at 177.) He later described her as only "mildly depressed." *Id*. Finally, contrary to Plaintiff's contention that the ALJ ignored the diagnoses made about her depression and carpal tunnel syndrome, the ALJ explicitly evaluated and analyzed these claims in the final written decision dated February 18, 2005. (Tr. at 15-16.)

Given the lack of objective medical evidence to support Plaintiff's diagnoses of depression and carpal tunnel syndrome and the scant amount of treatment Plaintiff received for these conditions, the Court finds Plaintiff failed to meet her burden to show these impairments as severe under the definition set out by the Commissioner in Section 404.1521(a). Therefore, the ALJ properly found, based on the evidence in the entire record, that Plaintiff's depression and carpal tunnel syndrome are not severe.

**D.    The ALJ Appropriately Found that Plaintiff Could Return to Her Former Type of Employment**

Plaintiff claims that, since there was no evidence to show the reasonable availability of jobs for the work which she is capable of performing, the ALJ improperly determined she could return to her former type of employment. With respect to step four of the five-step analysis, the

ALJ considers whether the claimant can do past relevant work based on the claimant's residual functional capacity.  20 C.F.R. § 404.1520(a).  Once the ALJ finds that the claimant has the residual functional capacity to perform past relevant work, it will not consider other factors such as age, education, or the availability of jobs in this area in the national economy.  20 C.F.R. § 404.1560(b); *Williams v. Sullivan*, 970 F.2d 1178, 1187 (3d Cir. 1992).  Hence, under the SSA's regulations, the ALJ was not required to consider the availability of jobs in Plaintiff's past relevant work and therefore properly determined that Plaintiff could return to her former type of employment.

## VI.    CONCLUSION

For the foregoing reasons, this Court finds that the ALJ's analysis of the evidence in the record and resultant decision were adequate and supported by substantial evidence.  Therefore, the Commissioner's decision denying Disability Insurance Benefits to Plaintiff Ruza Vajentic is **AFFIRMED**.  An appropriate Order accompanies this Opinion.


**Dated**: October 23, 2006                                                             _____

                                                                                        s/ William J. Martini            
                                                                                        **William J. Martini, U.S.D.J.**